Argued February 5; affirmed April 1, 1947

## ROBBINS *v.* IRWIN ET AL.

(178 P. (2d) 935)

*John F. Conway*, of Portland (with Emerson U. Sims, of Portland, on brief), for appellant.

*Robert F. Maguire* and *James J. Kennedy*, both of Portland (Maguire, Shields & Morrison and James J. Kennedy, of Portland, on brief), for respondents.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY, HAY and WINSLOW, Justices.

BAILEY, J.

The plaintiff, J. A. Robbins, as executor of the estate of Joseph L. Peter, deceased, brought this action under the state employers' liability act to recover damages from H. W. Irwin, and others, doing business as Irwin & Lyons, for the alleged wrongful death of decedent. From a judgment in favor of defendants, plaintiff has appealed.

Deceased, Joseph L. Peter, was killed in an accident on May 3, 1944, while employed by defendants, who were conducting logging operations in Coos county, Oregon. Areas or strips of timber land had been outlined by William L. Preston, the bull buck, in which

the timber fallers were to work. Peter and Avon Wilcox had been assigned to one of these areas and were engaged in felling a fir tree at the time of the accident. They were capable, highly paid timber fallers with many years of experience in the woods. At the time of the accident they were, and for about two weeks prior thereto had been, working together as a two-man team of fallers and receiving the same pay, which was at the rate of 75 cents per thousand feet of timber felled. For over a year prior to his death, Peter had been earning in excess of $400 a month.

There is evidence tending to prove that it was the duty of both Wilcox and Peter to determine what trees to fell and where to fell them; to make the areas or strips in which they were operating safe from various hazards; and to prepare runways or means of escape for themselves from the dangers of falling trees and to clear them of obstructions. Wilcox was known as the head faller of this two-man team but he had no authority to hire or fire his partner Peter or anyone else. In event of dispute his decision was final. There was, however, no dispute in this case between Wilcox and Peter.

On the day of the accident Wilcox and Peter had felled a number of dead trees before they began felling the fir tree involved in Peter's death. This tree was described by Wilcox as more than 200 feet tall and from three to three and one-half feet in diameter at its base. About 15 to 30 feet, the testimony of witnesses varying as to the distance, from this fir was a live maple tree approximately two feet thick at the base and 100 feet tall. Wilcox testified that the question whether the maple tree should be felled before the fir was a matter for him and Peter to decide. Joe Lussi testified that he heard Preston, the bull buck,

tell Peter that he, Peter, would not get paid if he cut down the maple tree. This was denied by Preston and also by Wilcox, both of whom testified that if the maple tree had been felled by Peter and Wilcox, they would have been paid therefor at the same rate as for felling any other tree.

Wilcox testified that after the cutting and sawing of this fir tree had been completed Peter inserted a steel wedge on the opposite side from which they wanted the tree to fall, and after the tree started to fall Peter "probably went back, I would say, thirty feet; twenty or thirty feet." He further stated:

"Q. Which direction did you run?

A. I went out to the side. I didn't run at all. I had lots of time and he went down there and stopped. And then as this tree went over it brushed the maple, and when a maple goes over, or any tree that you brush, when it comes back you always watch it, because that is when it will throw limbs.

Q. Sure.

A. Either a limb off the maple or one from the fir that would catch in it. Well, it didn't throw any limbs the first time. Then when it went over the second time, well, we quit watching it then because we considered the danger over; you naturally would. And the next time about a quarter of that—of the top, or at least a big limb off of it, come back. And I didn't see it until it was, well, right close to his head. Just the ends of that struck him; just the top limbs of that.

\* \* \* \* \*

Q. As I gather from your testimony, this was an unusual accident in that this did not fly up on the first rebound?

A. That is right. If it flew off the first rebound it would have been nothing to get out of the

road; we could very easily, either one of us, have got out if we had been standing there.

Q. Because you were both watching it at the first one?

A. That is right.

Q. And the fact that it didn't, then you directed your attention to your other duties?

A. We directed attention to see how the tree was going to light.

Q. Then it apparently took another rebound and came back?

A. That is right.

Q. That is rare that that happens, is it?

A. I don't know if I ever noticed it to happen before.

Q. You never saw a similar happening to that?

A. No, I didn't; not as big a limb, I didn't.

Q. They usually fly off on the first rebound?

A. That is right.

Q. Now, there is nothing unusual about falling a tree where it brushes another one going down?

A. No, it is not.

Q. It is not unusual at all?

A. Not at all.

\*       \*       \*       \*       \*

Q. Now Joe was standing about thirty feet back, would you say, approximately?

A. Between twenty and thirty feet.

Q. There was nothing to prevent him from going further back, was there?

A. He had plenty of time to go further if he had felt like it.

Q. Plenty of time to get any place out of the way?

A. That is right."

Peter was taken to the hospital where he died a short time after arriving there.

The complaint alleges that the defendants were negligent in the following particulars, to wit: (1) In failing and neglecting to direct the felling of the large

maple tree prior to the felling of the fir tree; (2) in failing to properly, or at all, supervise the felling operations so as to avoid and minimize dangers there existing to their employees, particularly Joseph L. Peter; (3) in compelling Peter to work in and about a place of great danger and in failing and neglecting to provide him with a safe place to work; (4) in failing and neglecting to comply with the provisions of the logging safety code which specify that in felling timber "adjacent brush shall be cleared away from around the tree to be felled so there is sufficient room to use saws and axes and to permit a quick getaway."

It is further alleged that it was practical, without impairing the efficiency of the work "or means then and there being pursued by defendants, to have safeguarded, protected and rendered safe the place where said Joseph L. Peter was so ordered to and did perform his duties, by means of either one or all of the following devices, cares and precautions:" (1) By cutting and felling the large maple tree prior to the felling of the fir tree; (2) by refraining from felling the large fir tree at all; (3) by directing the felling of the large maple tree prior to the felling of the fir tree; (4) by clearing away brush and debris from near and around the large fir tree so as to permit Peter to make a quick getaway from the falling fir tree; and (5) by providing the proper way of escape and keeping same clear of brush for Peter so as to enable him to make an escape from the fir tree as it was falling.

Plaintiff's first assignment of error is based upon his exception to the giving of the following instruction:

"* * * You are instructed that if you find from a preponderance of satisfactory evidence herein that it was the duty of Mr. Peter as a faller to

direct, or with the head faller to actively assist in directing, the manner in which the work should be carried on with respect to felling the tree upon which he was working at the time of his death and with respect to the felling or removal of snags, brush, or other debris which might be deemed a hazard and danger in connection with their work, there could be no recovery in this case. If you further find that the death of Mr. Peter was proximately and solely caused because he failed to use proper care and precaution in the manner and in the direction in which said tree was felled, or if he failed to use the proper care and precaution in not removing the maple tree in question before felling said tree—provided, of course, you find that said maple tree did constitute such a hazard that it should have been removed, and it is for you to say whether it did constitute such a hazard—and you find that it was a part of his duty as a faller to remove that maple tree or to remove debris and clean up around the scene of operations, then and in that event the plaintiff would not be entitled to recover in this case.

''In other words, you are instructed that it is the law of this state that an employee to whom has been assigned the duty of rendering an operation safe has no cause of action against his employer if he is injured through a defective condition resulting from his failure to have performed his duty. You are therefore instructed that if you find from the evidence that it was the duty of the deceased to see that the work was performed in a safe manner, and you further find that the accident was caused by the failure to perform the work in a safe manner, and that that was the sole cause of the accident and defendants were not negligent in one or more respects as charged against them in the complaint, then that would be a complete defense and the plaintiff could not recover in this action.

''* * * if the felling of snags, clearing of brush and debris around the place of felling was the duty

of deceased, or one of the duties imposed upon him, and his death came about because of his failure to perform this duty, if he did have such duty, then his employer could not be held liable on account of his failure to do what his duty required him to do.''

The Oregon employers' liability act (§§ 102-1601 to 102-1606, inclusive, O. C. L. A.) imposes upon all owners, contractors, subcontractors and other persons having charge of, or responsible for, any work involving a risk or danger to the employees, the duty to use every care, device and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device. § 102-1601, O. C. L. A. By § 102-1602, the manager, superintendent, foreman or other person in charge or control of the construction or works or operation is made the agent of the employer in all actions for damages for death or injury suffered by an employee.

It is plaintiff's contention that Preston, the bull buck, was the foreman over the work which was being performed by Wilcox and Peter, and that Wilcox, who was designated as the head faller, was directly in charge of the work being performed by Peter. There is evidence which tends to show that the bull buck exercised no supervision over the fallers other than to assign them to certain designated areas or strips; that it was not his duty to tell them what trees to fell or where to fell them; and that it was not his duty to give orders as to their operation with respect to the felling of snags or removal of brush and debris which might be deemed a hazard or a danger in connection with their work.

Felling timber is known to be dangerous work. Its very nature is such that its place of operation is not stationary. Much of the work is done in mountainous territory where there is heavy underbrush and dead timber, both standing and fallen. The danger incident to the felling of trees is the direct result of the operations carried on by the fallers, who are always on the ground and have better facilities for knowledge thereof than the bull buck or anyone else connected with the logging operation. The manner and mode in which the work is performed require judgment and discretion.

Defendants assert that it was a part of the duties of Wilcox and Peter, and for which they were paid, to prepare a safe place in which to work. They further contend that Wilcox and Peter were in charge of and responsible for the operations carried on by them, and that if Peter's death was caused by the negligence of anyone, it was caused by his failure to perform his duties. The question whether Wilcox and Peter were in charge of and directing the performance of the work in which they were engaged at the time of the fatal accident was submitted to the jury. If they had charge of the work within the meaning of the employers' liability act it was their duty to see that the provisions of that act were complied with. §§ 102-1601, 102-1602 and 102-1603, *supra*.

The United States circuit court of appeals, ninth circuit, in *Marks v. Bauers,* 3 F. (2d) 516, in referring to what is now § 102-1603, observed:

"* * * As will have been seen, section 6787 of the Oregon Laws expressly declares it to be the duty of the 'owners, contractors, subcontractors, foremen, architects, or other persons having charge of the work' in question to see that the Employers'

Liability Act is complied with. That duty is by the statute distinctly placed upon each of those specifically mentioned, and all other persons having charge of the particular work, in precisely the same way and to precisely the same extent. Neither the owners nor the superintendent are by the statute made any more responsible for the construction or operation of the particular structure in question than the foreman. The duty so imposed upon each can no more be delegated by the one than by the other. Such being the statute of the state, the courts are bound by it."

In that case plaintiff, who was the foreman of one of the two shifts operating defendants' rock crusher, was struck by a rock which fell from the conveyor. Plaintiff contended that his employers were negligent in not placing guards upon the conveyor to prevent the falling of rocks from it. The court held, however, that inasmuch as he was the foreman in charge of the work, it was his duty to see that the conveyor was made safe and that his neglect to do so could not form the basis of a claim against his employers.

Another case relied on by the defendants in support of the correctness of the challenged instruction is *Schmidt v. Multnomah Operating Company,* 155 Or. 53, 61 P. (2d) 95. Schmidt was known as chief engineer and superintendent of defendant's engineering department. His salary was $250 a month together with room and board. He had no authority to hire or fire assistants nor make purchases, with the exception of minor items in emergencies, without the approval of the hotel manager. He submitted plans to the manager for enlarging the capacity of the ice machine and installation of a new guard on it. These plans were approved and the plaintiff and an assistant completed the alterations, except for the installation of a new guard. A few

days later, while plaintiff was inspecting the operation of the machine, his foot slipped on the icy floor and his right hand inadvertently came in contact with the unguarded machine, causing the injuries of which he complained. Judgment was recovered by plaintiff in the circuit court but was reversed on appeal on the ground that plaintiff could not avail himself of the provisions of the employers' liability act as he was the foreman or chief engineer and it was his duty to see that the machinery was properly safeguarded. In denying him relief, the court said:

> "It will be observed that in our Employers' Liability Act foremen are expressly charged with the duty of seeing to it 'that the requirements of this Act are complied with'. Its authors evidently believed that its objectives would be better achieved by imposing the duties created by it not only upon owners and contractors but also upon all vice principals. The statute makes no distinction between the duty of the one and of the other. The duties of principal and of vice principal are equal. \* \* \*
> "It seems evident that one who has violated a statutory duty can not have a statutory right of action to secure redress. We believe that the Federal Circuit Court of Appeals, in Marks v. Bauers, supra, correctly construed our Employers' Liability Act."

In *Straub v. Oregon Electric Ry. Co.*, 163 Or. 93, 94 P. (2d) 681, recovery was denied plaintiff, who was foreman in charge of operations, because the injuries of which he complained were the result of his own negligence and his failure to perform the duties imposed upon him.

*United States Steel Products Co. v. Noble*, 10 F. (2d) 89, was an action by Noble, the third engineer on defendant's steamship, to recover damages suffered

by him when a new glass inserted by him on the water gauge blew out, resulting in loss of sight of one eye. In reversing the judgment in his favor, the court said:

> "The discussion in the charge as to contributory negligence was irrelevant. Neither contributory negligence nor assumption of risk is here involved. The question is whether or not the accident was due solely to Noble's neglect of duty to attach the available chains, ropes or wires. If the jury believed that such attaching was, as the chief engineer testified, only a minor repair—not such as required his specific permission, but, on the contrary, such as fell within the duty of the third engineer when, at the beginning of his watch, he found or knew that no chain was attached—then on authority and reason his failure to make the attachment is the sole proximate cause of his injury. As against another employee, the employer may not delegate the duty of keeping in reasonably safe condition the essential appliances; but the employee charged with the very duty of so keeping them cannot make his own neglect of that duty the basis of a claim against his employer." See also *Frese v. C., B. & Q. R. R.*, 263 U. S. 1, 44 S. Ct. 1, 68 L. Ed. 131.

■ There was substantial evidence in this case from which the jury might have found "that it was the duty of Mr. Peter as a faller to direct, or with the head faller to actively assist in directing, the manner in which the work should be carried on with respect to felling the tree upon which he was working at the time of his death and with respect to the felling or removal of snags, brush, or other debris which might be deemed a hazard and danger in connection with their work". Such a finding would be equivalent to a conclusion that Peter, or Peter and Wilcox, had "charge of the particular work" in which they were engaged within the meaning of that phrase as used in the employers' liability act.

■ If Peter was, or Peter and Wilcox were, in charge of the particular work in which they were engaged at the time of the accident, it was his or their statutory duty to see that the requirements of the employers' liability act were complied with, and in the event Peter's death was caused by his failure to perform his duty, no recovery could be had by plaintiff in this action. *Schmidt v. Multnomah Operating Co.*, supra; *Straub v. Oregon Electric Ry. Co.*, supra; *Marks v. Bauers*, supra; *High Splint Coal Co. v. Baker*, 247 Ky. 426, 57 S. W. (2d) 60.

The nature of the work which Peter was employed to do distinguishes this case from that of *Moen v. Aitken*, 127 Or. 246, 271 P. 730, where it was held that plaintiff was not in charge of the work for the reason that he "was a carpenter in the lowest scale of employment", and that it "was his duty to obey orders and not to give them." The facts in this case also differ materially from those in *Yovovich v. Falls City Lumber Co.*, 76 Or. 585, 149 P. 941. In that case plaintiff's son was working as a timber bucker for the defendant when he received injuries which resulted in his death. After the trees had been felled, the head bucker, who was foreman over the other employees, including the deceased, examined them and determined "whether and how and where they should be sawed into sections, placing marks thereon, which constituted orders and directions to the buckers to saw the trees in two at such marks." According to the opinion in that case the deceased's sole duty was to saw the trees where marked. No one seems to have contended that he was in control of the work. As stated by the court: "Under section 5 of the act, when the decedent conformed to the orders of his superior according to his duty, the resulting injury was not his fault. According

to section 2, the person in control of the work was the agent of the employer.''

■ We are of the opinion that the assailed instruction, when considered as a whole, is correct.

■ Plaintiff's second assignment of error is based upon the refusal of the court to give plaintiff's following requested instruction: ''I instruct you that under section 2 of the employers' liability act, the person in control of the work, the foreman in charge of the work was the agent of the employers and his negligence, if any there be, is the negligence of the defendants.'' Section 2 of the employers' liability act (§ 102-1602, O. C. L. A.) was read verbatim by the court to the jury. In *Hoag v. Washington-Oregon Corp.*, 75 Or. 588, 144 P. 574, 147 P. 756, the court, in referring to a similar situation, said: ''It is no objection to the instruction that the court used the exact language of the statute [§ 1, employers' liability act], instead of an equivalent in terms of its own. Nothing can be clearer to the average mind than the plain language of this portion of the statute.'' There is no merit in this assignment of error.

■■ In the next assignment of error plaintiff contends that the court erred in refusing to instruct the jury as follows: ''I instruct you that under section 5 of the employers' liability act, when Joseph L. Peter conformed to the order of his superior as to his duty, the resulting fatal injury was not his fault.'' This requested instruction is based upon two assumptions, to wit, (1) that Peter at the time of the accident was acting under the order of his superior, and (2) that the injury was not due to his negligence. Whether Peter was acting pursuant to the order of his superior and whether he was negligent were properly submitted

to the jury as questions of fact. No error was committed in refusing to give this requested instruction. Nor did the court err in refusing to instruct the jury "that Joseph L. Peter, acting as a faller, as a matter of law is not one in charge or control of the work under the terms of the employers' liability act." The evidence tended to show that Peter and Wilcox were in charge of the particular work in which they were engaged, and the court could not say, as a matter of law, that Peter and Wilcox were not in control.

■ The two remaining assignments of error are based upon the refusal of the court to give two of plaintiff's requested instructions relating to the duty of the employer under the employers' liability act. The substance of these instructions, with one exception not here necessary to set forth, was given.

Finding no error the judgment appealed from is affirmed.