Argued September 4, affirmed December 3, 1958, petition
for rehearing denied August 4, 1959

# HOWARD *v.* FOSTER & KLEISER CO.

332 P. 2d 621
342 P. 2d 780

*Duane Vergeer* argued the cause for appellant. On the brief were Vergeer & Samuels; Wood, Matthiessen, Wood and Tatum; John R. Brooks and Charles S. Crookham; all of Portland.

*John J. Higgins III* argued the cause for respondent and cross-appellant. With him on the brief were Black, Kendall & Fain; all of Portland.

ROSSMAN, J.

This is an appeal by the plaintiff from a judgment entered by the circuit court in favor of the defendant notwithstanding the fact that the jury returned a verdict for the plaintiff in the sum of $25,000. The defendant is an outdoor billboard advertising company for which the plaintiff was working upon one of its billboards at the time of his injury August 26, 1953. The cause was submitted to the jury upon charges of negligence after the trail judge had indicated willingness to direct a verdict. ORS 18.140. The plaintiff sustained injury when the lowest rung of a ladder upon which he had placed his weight broke.

The complaint averred that the defendant failed to observe the demands of (a) due care; (b) the Employers' Liability Law (ORS 654.305 through 654.330); and (c) the Basic Safety Code, Part II, Ladders and Scaffolds, §§ 2.31, 2.32 and 2.40 (promulgated by the Industrial Accident Commission pursuant to ORS 654.005 to 654.100). The complaint charged that the defendant supplied the plaintiff with

a defective ladder; failed to inspect the ladder; stored the ladder outdoors; failed to construct the ladder and accompanying scaffolding so that they could bear four times the maximum weight to be borne by them; failed to place a safety rail upon the scaffolding and ladder; failed to provide the plaintiff with a safe place in which to work; failed to warn the plaintiff of the dangers attendant upon his work; and failed to employ every practical device and caution for the safety of life and limb.

The answer denied all charges of negligence. It alleged that the plaintiff was the foreman in charge of the work which he and his helper were performing at the time of the injury, and that it was his duty to have inspected all equipment and to have seen that the requirements of all laws pertaining to a billposter's safety were observed.

The plaintiff-appellant presents the following two assignments of error:

"The Trial Court erred in entering the Judgment Notwithstanding the Verdict on the basis of insufficiency of evidence to sustain the allegations of the plaintiff's complaint or the specifications thereof."

"The trial Court erred in entering the judgment notwithstanding the verdict on the ground that the evidence and testimony introduced by appellant affirmatively showed him to be a foreman or person in charge of the work, and that he could not therefor [sic] maintain an action against or have any recovery from the respondent under the Employers' Liability Law of the State of Oregon, or otherwise."

Through William Herschler, the shop foreman of the defendant's Portland plant, the defendant assigns each of its journeymen billposters, such as the plain-

tiff, to the task of changing the posters upon a large number of billboards entered upon a list which he hands to the journeyman. Generally, a helper works under and assists the journeyman billposter. To take care of a list of billboards that are located outside Portland may require a trip lasting two or three days. Prior to departure, the journeyman is given sufficient money to enable him to discharge the hotel, meal and incidental expenses of himself and his helper. Upon his return to Portland he accounts for the sum that had been entrusted to him. In addition, the journeyman is charged with the responsibility of preparing timecards for himself and his helper. The two are paid on an hourly basis computed from the journeyman's reports. The journeyman billposter decides the order in which he posts the signs; that is, he arranges his route. He also determines the hour for beginning and terminating the day's work. Mr. Odell Homsley, a journeyman billposter in the defendant's employ, was called to the witness stand by the plaintiff and, under examination by plaintiff's counsel, gave the following testimony concerning the journeyman's authority over the helper:

"Q Assuming, Mr. Homsley, that the helper didn't obey you, do you have the authority to discharge him?

"A If it—yes, sir, I think so.

"Q You think so?

"A I could—I don't have authority to fire him, but I have authority to send that man into Portland and they—then they can deal with him.

"Q That is all true, but do you have the authority to discharge him out there?

"A Out on the job, I do.

"Q You do that?

"A I say I have authority to—not to, not to fire him, no, sir, but send that man into Portland.

"Q All right."

When a journeyman billposter is sent upon an assignment, the defendant provides him with an equipment truck containing all sign-posting equipment needed in the performance of his work. The plaintiff admitted that his truck contained, among other items, a ladder and "a complete scaffolding."

The billboard upon which the plaintiff was working at the time of his injury was 100 feet from Highway 101, a little south of Tillamook. It stood 10 feet above the ground. Three feet lower a platform, called a walkway, extended out from the billboard about three feet and for the length of the board. The billposters walked upon it while performing their work. The Tillamook billboard was 10 feet high between its upper and lower moldings and therefore its upper area was 13 feet above the walkway. Accordingly, a ladder and scaffolding were necessary so that the billposter could reach the upper areas of the board. The Tillamook billboard was similar to the defendant's other billboards and, that being true, the defendant had provided the material needed for easy construction of the scaffolding. The principal item was a ladder of the familiar kind, equipped at its top with a hook. Other items included two planks and a couple of spreaders. The Tillamook billboard, like others of the defendant's billboards, was supplied with all of the material and equipment essential to the erection of the scaffolding. The material lay upon the walkway and consisted of the items just mentioned. In the truck which the plaintiff drove to the billboard there

was similar equipment, as the plaintiff freely conceded. The equipment in the truck and that upon the walkway were virtually duplicates of each other. The plaintiff was free to use either; he chose the equipment upon the walkway. No one in the course of the trial questioned the soundness of the equipment in the truck; in fact, the plaintiff's helper used the ladder in the truck to complete the posting of the bill after the ambulance had removed the plaintiff from the scene of his injury. Unlike the equipment that lay in the open upon the walkway, that in the truck had not been exposed to the vagaries of the weather.

The plaintiff acknowledged that one of his duties was to inspect the equipment which he used in performing his work and to report to the defendant's Portland office any defects he found. The defendant provided its journeymen with a supply of printed forms which they used for that purpose. The plaintiff also testified that another of his duties was to take note of posters that were loose and to either repair them or report them to the Portland office. However, our principal concern is with his duty to inspect ladders, scaffolding and similar apparatus which, if defective, affected the safety of himself or his helper.

We have taken note of the fact that the plaintiff testified that the equipment in his truck included "a complete scaffolding"; that is, a ladder, planking, spreader, etc. He conceded that he was at liberty to bring that material to the billboard or use the equipment that lay upon the walkway. He gave the following testimony:

"Q * * * if you as the journeyman decided and determined that you wanted to use the equipment that was on the truck, the helper would have

no alternative but to follow your orders in that regard, isn't that correct?

"A That's right.

"Q And you could make that decision then, couldn't you?

"A Yes, I could.

\* \* \*

"Q You could use the equipment from your truck if you didn't like the looks of the equipment on the location, couldn't you?

"A That's right."

The Tillamook billboard was not upon the list which the plaintiff regularly served, but was assigned to him upon the occasion in question because the journeyman, Mr. Homsley, who normally took care of it, was upon vacation.

When the plaintiff's truck came to the Tillamook billboard, the plaintiff parked it and thereupon he and his helper walked to the board. They brought with them paste buckets, brushes and the poster. After they had performed their work upon the lower part of the board, the plaintiff hung the ladder's hooks over the upper molding of the billboard and put the spreaders in place. The spreaders held the lower part of the ladder from the billboard so that the lower rung was about even with the outer edge of the walkway and two feet above it. When the ladder was in that position its lower rung was about 11 feet from the ground. A couple of planks and another item or two were then put in place and the scaffolding was ready for use. Thereupon the plaintiff picked up his paste bucket and, placing one foot on the bottom rung, raised himself preparatory to putting his other foot on the second step. At that juncture the lower rung broke and he fell to the ground. Inspection revealed that the lower rung of the ladder had dry rot.

In view of the treatment given by the plaintiff's (appellant's) brief to the evidence bearing upon his alleged duty to inspect the equipment with which he worked, we shall now quote some of his testimony upon that subject. Despite assertions in oral argument by plaintiff's counsel to the contrary, there is nothing in the record which indicates whether or not the ladder was painted. The only witness who was questioned on the subject stated that he did not know. Since the Basic Safety Code, Part II, upon which the plaintiff relies, provides, in § 2.34, that ladders shall not be painted, so that defects may more readily be detected, it must be assumed that this ladder was not painted.

Upon direct examination, the plaintiff testified as follows concerning inspection:

"Q Did you inspect the ladder?

"A I inspected it, yes, as good as I could.

"Q Did it look all right?

"A It looked all right.

\* \* \*

"Q You looked at the ladder, I believe you stated?

"A I did.

"Q And its condition was satisfactory so far as you could see?

"A So far as I could see."

Upon cross-examination the plaintiff's attention was directed to the printed forms with which the journeyman billposters were provided to facilitate their report of defects which they observed. The following then occurred:

"Q Well, isn't it one of your duties, Mr. Howard, to use these reports?

"A That's right, yes.

"Q For what purpose?

"A Well, for one thing, is that if there was posters flagging * * *.

\* \* \*

"Q Not with regard to anything other than paper?

"A Oh, yes. I would say yes there was.

"Q Well, now—

"A Uh huh.

"Q With regard to what?

"A Well with regard to my work.

"Q And does that—by that I understand that you mean with regard to sign poster, with regard to equipment, with regard to ladders, that you— it was your duty to report any defects?

"A That's right.

\* \* \*

"Q Well, wasn't it part of your job when you saw defective equipment to report it?

"A I would say it was, yes.

\* \* \*

"Q And if you found the equipment to be defective, wouldn't you order your apprentice helper not to use it?

"A Well, I think common sense would, would tell you that.

"Q And I believe you testified on direct examination that so far as you knew there were no inspections made other than on the occasion of your posting the sign each month or sixty days or every two weeks when you necessarily were handling and using the equipment?

"A As far as I know, I would say that.

\* \* \*

"Q Well, you do most always inspect the equipment?

"A I believe always, yes.

"Q And that is part of your duties, isn't it?

"A Well, whether it was or not, I think we would do it.

"Q It was part of your duties?

"A Well, yes. That is right. All right.

"Q It was?

"A All right—

"Q All right.

"A —I will put it that way if you want.

"Q No, you tell us what the facts are—I don't want any—

"A Well, I will say yes.

\* \* \*

"Q And as a matter of fact, if—even though there were equipment on the job site, if you as the journeyman decided and determined that you wanted to use the equipment that was on the truck, the helper would have no alternative but to follow your orders in that regard, isn't that correct?

"A That's right.

\* \* \*

"Q And in connection with your duties there, it was your duty when you saw defective equipment to report it, wasn't it?

"A I would say yes. And it was—

"Q And it was your duty to inspect the equipment as you used it, wasn't it?

"A All right.

\* \* \*

"Q This particular truck, in any event, had the same amount of equipment that was on this particular location where this incident occurred, didn't it? It had a ladder and it had the hooks and it had these catwalks or planks or whatever it was?

"A That's right, yes.

"Q And if you had wanted to, you could have

ordered your apprentice to use that equipment instead of what was on location, couldn't you?

"A Are you talking about the equipment on the truck?

"Q Yes.

"A Yes, I—yes, I will say that.

&ast; &ast; &ast;

"Q You could use the equipment from your truck if you didn't like the looks of the equipment on the location, couldn't you?

"A That's right."

Mr. Homsley, who normally attended to the Tillamook billboard, as a witness for the plaintiff, swore that it was the duty of journeymen to inspect equipment and report to the defendant's Portland office all defects. For example, he testified:

"Q And if you found a defective ladder as a result of your duty to look at it, you would report the defect, would you not?

"A I would.

"Q And that would be in the regular course of your duties as a journeyman, would it not?

"A That's right. That would be.

&ast; &ast; &ast;

"Q Now it was your job, when you saw defective equipment, to make a notation of it and turn it in to the company, was it?

"A It was my job to do that.

"Q In other words, on the question of the use of equipment and matters of that kind, like this job on this Tillamook sign, you were in charge of that job, weren't you?

"A I was in charge of that job, yeah."

Homsley testified that upon receipt of a report show-

ing a defective ladder, the following happens:

"They give me another ladder to take down and replace the one that was defective, or they have the construction boys to take a ladder down there."

The ladder which broke under the plaintiff's weight had been exposed for some time to the weather as it lay upon the walkway. After his injury, the plaintiff obtained a ladder, which the jury could find was the one from which he fell, and delivered it to a laboratory. A Mr. B. Neeley Wood, testing engineer for the laboratory, as a witness for the plaintiff, stated that in testing the ladder for defects he lay it flat upon the base of his testing machine and then applied to its rung "a large 150,000-pound Reilly tensile compression machine." He explained:

"It was rather as if you would lie the ladder down and step on the rungs in this direction here [indicating]. It was at 90 degrees to the normal direction that you would use in climbing."

If he discovered any defects in the rungs by that test he did not mention the fact. Concerning the lowest rung, that is, the one which broke, he said: "The end of the tenon was remaining in the hole." He tested that rung in this way: "I dug at it with a knife" and found that it had been attacked by dry rot. Mr. Wood was asked by plaintiff's counsel:

"Q Can you detect dry rot from a visual inspection?

"A It all depends upon conditions. You can in many cases, other cases you can't. Many cases you will find a painted surface, particularly where dry rot has taken place underneath the paint, and on the outside it looks perfectly solid."

As we have stated, the record contains no evidence

that the ladder from which the plaintiff fell had ever been painted. This is not an instance in which the defect was concealed or was detectible only through the use of a special device or difficult test which the employee was incapable of applying.

It will be noticed that Mr. Wood tested the ladder by laying it flat upon the base of his machine. He swore that a test applied to a ladder while it lies flat is as effecient as if the ladder stood upright. When the plaintiff climbed to the walkway of the Tillamook billboard there lay before him on the walkway the ladder. No one has claimed that he could not have walked upon its rungs as it lay there and thus have given each rung the test of his imposing weight, 225 pounds. Further, it will be observed that Wood discovered the dry rot in the lowest rung by digging into it with a knife. Accordingly, he used nothing but a simple tool the like of which can be found in the kitchen and in most men's pockets. Although the plaintiff swore that he inspected the ladder, he did not reveal the nature of his inspection except to say that he looked at it.

Homsley, aforementioned, testified that he had used the ladder which lay on the walkway of the Tillamook billboard and had found no defect in it. His weight was 138 to 140 pounds.

The plaintiff's helper at the time of the accident, Charles Salmon, swore that after the plaintiff had been taken to a hospital he [Salmon] finished the posting of the billboard, using the ladder which he obtained from the truck.

The record contains no evidence indicating that the defendant charged anyone except its billposters with the duty of inspecting the equipment and para-

phernalia with which they worked. The plaintiff acknowledged that he was aware of that fact. Accordingly, when he placed his weight upon the rung of the ladder which broke, he could not have been under a belief that someone else had inspected it.

■ The foregoing completes our review of the evidence. In setting it forth we were obedient to the rule that, in the consideration of assignments of error such as those previously quoted, we must view the evidence in the light most favorable to the plaintiff.

ORS 654.305 through 654.335, together with 654.990(5) is our Employers' Liability Law as contained in our present compilation of laws. ORS 654.305 says:

"* * * all owners, * * * and other persons having charge of, or responsible for, any work involving a risk or danger to the employes * * *, shall use every device, care and precaution which it is practicable to use for the protection and safety of life and limb, limited only by the necessity for preserving the efficiency of the structure, machine or other apparatus or device, * * *."

ORS 654.310 provides:

"All owners, * * * or persons whatsoever, engaged in the construction, * * * alteration, * * * of any building, * * * or other structure, * * * shall see that:

"(1) All * * * wood, * * * or other material whatever, is carefully selected and inspected and tested, so as to detect any defects.

"(2) All scaffolding, staging, false work or other temporary structure is constructed to bear four times the maximum weight to be sustained by said structure, * * *.

"(3) All scaffolding, staging or other structure more than 20 feet from the ground or floor is

secured from swaying and provided with a strong and efficient safety rail or other contrivance, so as to prevent any person from falling therefrom."

The pertinent provisions of Part II of the aforementioned Basic Safety Code follow:

"2.31. Ladders shall be frequently inspected and maintained in good condition at all times, * * *.
&ast; &ast; &ast;

"2.40. Wood ladders when not in use, should be stored at a location where they will not be exposed to extreme conditions of heat or moisture but where there is good ventilation. They shall not be stored near radiators, stoves, steam pipes, or other places subjected to excessive heat or dampness."

It will be noticed that the section last quoted uses the term "should be." Section 1.6, Part I, of the Basic Safety Code states:

" 'Shall' and 'Must' are used to indicate the provisions which are mandatory."

Section 1.7 provides:

" 'Should' or 'It is recommended' are used to indicate provisions which are not mandatory because of variation in work conditions."

The following provisions are also taken from Part I:

"1.25. Inspections of all buildings, machinery, docks, cranes, hoists, and other equipment shall be made by a competent person or persons as often as the character of the equipment and type of operation requires. Defective equipment or unsafe conditions found by these inspections shall be replaced or remedied promptly."

■ As will be recalled, the complaint made charges of negligence which were based upon (1) the common-law rule of due care, (2) provisions of the Employers'

Liability Law, and (3) sections of the Basic Safety Code. The plaintiff's brief says:

> "The case was submitted to the jury on the alternative theories of violation of the Oregon Employers' Act or common-law negligence on the part of the respondent."

When the applicability of either the Employers' Liability Law or some other rule of law turns upon a disputed question of fact, it is proper to submit the issue of fact to the jury. *Hoag v. Oregon-Washington Corporation,* 75 Or 588, 144 P 574, 147 P 756.

■ The Employers' Liability Law exacts of employers measures for the safety of employees which are more stringent than those of the common-law rule of due care. *Shelton v. Paris,* 199 Or 365, 261 P2d 856; *Hoffman v. Broadway Hazelwood,* 139 Or 519, 10 P2d 349, 11 P2d 814; and *Fromme v. Lang & Co.,* 131 Or 501, 281 P 120. Again, in all instances in which the Employers' Liability Law sets forth the applicable safety measures which must be taken, that statute deprives employers of some defenses which are available in actions governed by the common-law rule of due care. For example, in actions under the Employers' Liability Law, the negligence of a fellow servant is not a defense. ORS 654.330. Contributory negligence mitigates damages under ORS 654.335, but does not bar recovery. If recovery cannot be had in this case under the Employers' Liability Law, it follows that none is available under the common-law rule of due care.

■■ Recovery is prevented in this case under the common-law rule because it was the plaintiff's duty, as he admitted, to have inspected the ladder which broke under his weight. His nonperformance of that duty was the proximate cause of his injury under com-

mon-law rules, even if it could be said that failure to store the ladder in a place where it would not have been exposed to the weather, or to have taken any precaution exacted by the Basic Safety Code, was a contributing cause. The plaintiff argues that the defendant was guilty of common-law negligence in not having furnished him with safe equipment, but the case at bar is not an instance in which an employee was ordered to use unsafe equipment, or, in the alternative, terminate his employment. The defendant had furnished the plaintiff with two complete sets of equipment, one of which was free from defects, and had charged him with the duty of inspection before making use. If the plaintiff had found that the ladder that lay upon the walkway was unsafe, he was not required to use it, or, in lieu thereof, to quit his employment, for there was available to him the ladder in the truck; in fact, his helper took that very course after the plaintiff's injury and completed the work with the ladder that he obtained from the truck. No matter how the situation is considered, the question of liability under common-law standards returns to the issue as to whether the plaintiff was himself responsible for his injury. Whether viewed under common-law standards as a question of proximate cause, contributory negligence or primary negligence of the principal for which the plaintiff was himself responsible as vice-principal, there is no right of recovery under common-law principles. *American Coal Mining Co. v. Lewis,* 77 Ind App 394, 133 NE 850; *Atchison T. & S. F. Ry. Co. v. Kennard,* 199 Okl 1, 181 P2d 234; and *Pittsley v. Allen,* 297 Mass 83, 7 NE2d 442. In the Pittsley case, the court said:

"* * * One who occupies the dual position of the victim of negligence and the primary wrong-

doer, is not entitled to ignore the latter, and re-
cover damages from another who is responsible
only secondarily and through a fiction of law, * * *."

*Atchison T. & S. F. Ry. Co. v. Kennard* said:

"* * * If the place where the work was to be
done was unsafe, it was his duty to see that it was
made safe."

From the American Coal Mining Company decision,
we take the following:

"* * * such rule has no application between a
master and a servant employed by him to perform
the duty which he owes to his other servants in
this regard, where such servant so employed is
injured because of a failure on his part to discharge
such duty. * * * One reason for holding that
such general rule has no application under the
facts stated is that the master, having engaged a
particular servant to discharge the duties owing
by him to his other servants, ought not be required
to engage still another servant to see that the
particular servant discharges his duty in order to
avoid a liability should he be injured because of
his failure to perform the specific duties for which
he was engaged."

The evidence discloses that the ladder which broke
when the plaintiff placed his weight upon it was not in
good condition, but the plaintiff's testimony establishes
that it was his duty to have inspected the ladder before
he used it. Simple inspection of a kind that could
readily have been made would have disclosed the de-
fect, and thereupon it would have been his duty to
have rejected the ladder. A safe one was available to
him in his truck. His failure to have made the inspec-
tion bars him from recovery under the common-law
principles so far discussed.

We now turn to the Employers' Liability Law. In

referring to its provisions, we shall cite them as they appear in ORS, although the plaintiff's injury preceded the revisions which were made to that measure in introducing it into ORS. The changes that were made to §§ 102-1601 through 102-1606, OCLA are inconsequential to this case. ORS 654.305, which is often termed the "and generally clause," and ORS 654.310 are quoted in a preceding page of this opinion.

ORS 654.315:

"The owners, contractors, subcontractors, foremen, architects or other persons having charge of the particular work, shall see that the requirements of ORS 654.305 to 654.335 are complied with."

The complaint sought to bring the duty of the defendant within the exacting safety measures set forth in the Employers' Liability Law. It charged the defendant with negligence in failing to see that (1) "all wood in said ladder and scaffolding had been carefully selected"; (2) "said ladder and scaffolding were constructed to bear four times the maximum weight"; (3) "said scaffolding and ladder had been inspected and tested"; and (4) "said ladder and scaffolding were provided with a strong and efficient safety rail." The complaint also charged the defendant with negligence "in failing to use every device, care and precaution practicable to be used" and then went on in the terms of the "generally" clause of the Employers' Liability Law.

■ It will be noticed that ORS 654.315 requires that owners and foremen shall see that the requirements of the act are met. In seeing to it that the measures for the protection of workmen from injury are taken, ORS 654.315 and 654.320 plainly authorize the employer to appoint foremen and charge them with the duty of

complying with the safety measures. Since the act demands that its safety measures shall be actually carried into effect, it is clear that if they are not, and a workman is injured as a result thereof, the mere fact that the employer appointed foremen and charged them with the duty of seeing to it that the safety measures were observed, does not exonerate the employer. But, in this case, it was not the helper, but the foreman who was injured. We must, therefore, inquire whether a foreman, who was charged with the duty of inspection, may recover if he was injured as the result of his failure to have performed that duty.

*Moen v. Aitken,* 127 Or 246, 271 P 730, *Malloy v. Marshall-Wells Hardware Co.,* 90 Or 303, 173 P 267, 175 P 659, 176 P 589, and *Camenzind v. Freeland Funiture Co.,* 89 Or 158, 174 P 139, are instances in which the employee who was injured was not a foreman. In the Moen case, the decision spoke of the injured employee as "in the lowest scale of employment." The statement of facts which precedes the Malloy opinion says: "Plaintiff was not a foreman and no employee of the corporation looked to him for instructions." In the Camenzind case, the injured workman operated a machine, and his employer's foreman had noticed that the safety measures exacted by the Employers' Liability Law had not been taken.

We now turn to decisions in which the injured workman possessed authority and had accepted the responsibility of seeing to it that required safety measures were employed.

In *Nuckolls v. Great Atlantic & Pacific Tea Co.,* 192 SC 156, 5 SE2d 862, the plaintiff, temporary manager of one of the defendant's stores, was injured when he slipped on a wet spot on the floor which was

due to the failure of the regular manager to have repaired a defective refrigerator. The plaintiff charged negligence in these particulars: failure to provide a safe place to work; failure to inspect; and permitting waste to accumulate on the floor. In affirming judgment for the defendant, the court said:

"It is the duty of the master to furnish the servant a reasonably safe place to work and reasonably safe and suitable tools and appliances. These duties are positive, absolute and personal. They are termed non-delegable duties, and the master cannot evade liability by delegating their performance to another. And if they are delegated, the agent to whom their performance is entrusted, whoever he may be, and notwithstanding he may be a fellow-servant in other respects, is a vice principal or representative of the master. In other words, he is the master's alter ego, whose negligence is that of the master and for which the master is answerable where a third person, whether an employee or a stranger, is injured thereby, where the injured person has not been negligent, and has not assumed the risk. [citations]

"But we are not here concerned with an injury charged to the defendant by a third person or an ordinary employee. The injury complained of was suffered by one who, under the evidence, was a vice principal or representative of the master. It affirmatively appears that there was no inherent defect in the floor in front of the refrigerator. And it is clear that if the floor became slippery by reason of water and waste food products falling thereon, it was just as much the duty of the plaintiff as manager to eliminate this risk and to maintain the floor in a reasonably safe condition as it was the duty of the defendant."

Then the court cited its earlier decision, *Cline v.*

*Southern R. Co.,* 101 SC 493, 86 SE 17, and declared that case held:

> "* * * an employer may delegate to the servant the preparation for his own place in which to do his work, and that the master may relieve himself of liability by entrusting to his servant the duty of maintaining the place of work in a reasonably safe condition, such as the servant is competent to undertake."

The holding in the Nuckolls case was based on the fact that the plaintiff was the manager of the store and "in full charge and control of the store." The term "nondelegable," therefore, is not an absolute one and there may be some delegation of authority. In the Nuckolls case it sufficed to bar the manager from recovery where his own failure to have discharged his duty was the cause of his injury.

There are a number of decisions which construed the duties of a foreman or other person in charge of the work under the Employers' Liability Law. An oft-cited case is *Marks v. Bauers,* 3 F2d 516 (9th CCA), wherein the court construed the Employers' Liability Law. In that case, a foreman of the defendant was injured while working on a rock crusher, and it appeared that he could have taken steps to avoid the injury. The court said:

> "The duty is by the statute distinctly placed upon each of those specifically mentioned, and all other persons having charge of the particular work, in precisely the same way and to precisely the same extent. Neither the owners nor the superintendent are by the statute made any more responsible for the construction or operation of the particular structure in question than the foreman."

In *Schmidt v. Multnomah Operating Co.,* 155 Or

53, 61 P2d 95, the plaintiff [defendant's foreman] was injured when he caught his arm in a machine which it was his duty to maintain, and based his complaint upon the Employers' Liability Law. The court, in commenting on the Employers' Liability Law, surmised that its authors believed that its objectives would be better achieved by imposing the duties created by it, not only upon owners and contractors, but also upon all vice-principals. The decision pointed out that the statute makes no distinction between the groups and that the duties of principal and vice-principal are equal. It ruled that the plaintiff, as the defendant's vice-principal, owed a statutory duty to see to it that the act of negligence charged in the complaint did not occur.

*Robbins v. Irwin et al.,* 180 Or 667, 178 P2d 935, presented controverted evidence as to whether or not the deceased workman, for whose death the action was brought, had charge of the operation in which he was engaged when death struck. If the plaintiff's version was accepted, the situation could be likened to *Moen v. Aitken,* supra, and *Malloy v. Marshall-Wells Hardware Co.,* supra, but if the defendants' prevailed, the situation was similar to the four cases last reviewed. The trial judge submitted the fact issue to the jury which returned a verdict for the defendants. The resulting judgment was affirmed by this court.

*Fields v. Fields,* —— Or ——, 326 P2d 451, affords an impression of the situations which a court will accept as proper delegations of authority. In that case, the plaintiff, who was operating a power-driven spray machine for his father, received injury when his arm was caught by the protruding bolt of a revolving shaft. In answer to the defendant's argument that the plain-

tiff was a person in charge of the work, the court said:

> "* * * There is no evidence tending to prove that plaintiff owed his father any duty to inspect the spray rig and to make certain that it complied with the employer's liability act. Leonard was not employed for that purpose nor was there any evidence that he had been assigned any such duty."

■ From the decisions just reviewed rules emerge. It is not possible to assign indiscriminately duties imposed by the Employers' Liability Law to mere laborers and thereby gain relief for employers from responsibility. On the other hand, persons may be invested with requisite authority and thereupon may be charged with the duty of inspection or of performing other functions demanded by the act. Thus, it is not possible for an employer to relieve himself of the statutory duty by merely designating a workman to perform it, even if the workman does, in fact, assume the duty and at times performs it. However, in many instances, it is necessary to appoint a foreman or select someone to be a "person in charge of the work." That is especially true in the case of corporations, since they must act through human agency.

■ The Employers' Liability Law clearly contemplates, as we have seen, delegation of authority to foremen, for it makes provision that certain persons, including a "person having charge of the particular work," shall be responsible for compliance with the act. Since an employer must have some discretion as to how he will set up his foremen and vice-principals, the duties imposed upon a particular employee may not be exclusively statutory but may be affected by responsibilities assigned to him by the employer. Accordingly, in an instance such as *Moen v. Aitken,* supra, in which

the employee was in "the lowest scale of employment," it would not have been consistent with the purposes of the Employers' Liability Law to have held that he was charged with supervisory powers of inspection. An employee of that lowly rank was the type of workman whom the act sought to protect. But when a duty of inspection is imposed upon an employee, who has powers sufficient in extent to make him a "person in charge of the particular work," the imposition upon him of a duty of inspection is not a true delegation in the sense of cases such as *Moen v. Aitken,* supra, and *Camenzind v. Freeland Furniture Co.,* supra.

 We come now to the application of the principles just developed to the present case. The defendant's operations were not conducted in a single factory or place but over hundreds of miles of highway. Of necessity, the size of the crew which worked upon a billboard was small. In such a situation, it could not have been practical to have one person directly supervise the work of those engaged in billposting unless that person was also actually engaged in the work of posting. We do not understand the plaintiff to contend that the Employers' Liability Law requires, in a case such as this, that a vice-principal must be sent with every two-man crew, whose duties would consist of standing on the ground and overseeing the work after he had inspected the equipment. It is not denied that the plaintiff had a considerable amount of discretion (1) in selecting the order in which the billboards would be serviced; (2) over the expense money for the crew; (3) of inspecting the billboards and the equipment; (4) of ordering the equipment in the truck to be used in lieu of that at the billboard site; (5) in directing the activities of the helper; (6) in reporting or repair-

ing defects which he found. In short, he was the "person in charge of the particular work."

In his brief, the plaintiff quotes from *Schmidt v. Multnomah Operating Co.*, supra, as follows: "It seems that one who has violated a statutory duty could not have a statutory right of action to secure a redress" and then argues that the plaintiff did, in fact, inspect the ladder and, therefore, had not violated the act. While the contention that the plaintiff had properly performed his duty is hard to reconcile with his assertion that the regular journeyman, and through him the defendant, had not properly performed the duty of inspection, we do not think that it realizes the import of the statute. It is not any violation of statutory duty which will prevent recovery by a violator, but the violation by improper performance of a duty which, if performed, would have prevented the accident. It was held in the Schmidt case that, in the absence of legislation to the contrary, a foreman, to whom was assigned the duty of repairing a machine or rendering an operation safe, has no cause of action against his employer if he is injured through a defective condition which resulted from his failure to have performed his duty. See, also, *Robbins v. Irwin,* 180 Or 667, 178 P2d 935; *Straub v. Oregon Electric Ry. Co.*, 163 Or 93, 94 P2d 681; and *Marks v. Bauers,* supra. The reasoning which underlies those decisions was well developed in *American Coal Mining Co. v. Lewis,* quoted in a preceding paragraph.

We shall set forth our views no further. The plaintiff was a foreman and, under the terms of the act which are quoted in a preceding paragraph of this opinion, it was his duty to have seen to it that the ladder was inspected and, if found defective, that it

was not used. He failed to perform a duty which he had undertaken. His neglect of duty did not reward him with a cause of action against the employer to whom he owed the duty.

The assignments of error previously quoted lack merit. The challenged judgment is sustained.

Vergreer & Samuels and Charles S. Crookham, Wood, Matthiessen, Wood and Tatum and John R. Brooke, Portland, for petition.

Black, Kendall & Tremaine and John L. Higgins, Portland, contra.

Nels Peterson, Frank H. Pozzi, Berkeley Lent, Donald R. Wilson, Charles Paulson, B. A. Green, Burl Green, Donald S. Richardson, James B. Griswold, Phil

H. Ringle, Jr., all of Portland, filed a brief as amici curiae.

ROSSMAN, J.

The plaintiff-appellant has filed a petition for a re-hearing which, as stated in his brief, charges:

"1. The Court erred in finding that the dry-rot defect in the ladder was discoverable by a visual inspection, inasmuch as the evidence is clear that the defect was latent and not patent.

"2. The Court erred in concluding that under common law as amplified by the Oregon Workmen's Compensation Act, a rejected employer engaged in hazardous activities was not liable for injuries to an employee occasioned by the negligence of the employer, even though the employee was a vice-principal of the employer and guilty of contributory negligence.

"3. The Court erred in finding as a matter of law that the plaintiff-appellant had been delegated a duty greater than making a visual inspection, this being if present in the case a question for the jury.

"4. The Court erred in concluding as a matter of law that the plaintiff-appellant had been delegated sufficient authority as to make him a 'vice-principal' under common law, or a 'person in charge of the work' under the Employers' Liability Act."

The Petition for a Rehearing is accompanied by briefs filed by counsel for the plaintiff-appellant and by amicus curiae. The attention which those members of the bar gave to this case caused us to analyze all of its issues once more.

We do not believe that we erred when we found that the plaintiff could have readily ascertained the ladder's condition. Since the brief which accompanies the Petition for a Rehearing indicates that the defect in the

ladder could have been discovered only through the use of special tools and skills, we will give this claim some attention.

No special equipment or ability was needed to detect the ladder's condition. A ladder is a simple utensil with which virtually every one is familiar. The plaintiff used ladders every day in performing his work. Very likely he acquired a more intimate knowledge of their construction, peculiarities and state of repair than any one who worked in the defendant's other departments. In *Borden v. Daisy Roller Mill Co.,* 98 Wis 407, 74 NW 91, 67 Am St Rep 816, it is said: "A ladder is one of the most simple contrivances in general use." In fact, a ladder is so simple and its condition can be so easily ascertained that ladders generally come within the simple tools doctrine. See 3 Labatt's Master and Servant, 2nd ed, § 924a, page 2480 and 56 CJS, Master and Servant, § 390, page 1211. When the plaintiff ascended to this billboard's walkway (platform) the ladder that he shortly undertook to use lay in front of him. He knew that it, like all the other ladders which the defendant kept at its billboard sites, was daily exposed to the weather. He also knew that it was his duty to inspect it. It is common knowledge that objects made of wood deteriorate when subjected to the rigors of fog, rain and sunshine—especially in coastal areas such as the one in which the ladder in question lay.

When the plaintiff stood upon the walkway of the Tillamook billboard and the ladder lay at his feet there was nothing, as our previous opinion stated, to have prevented him from walking upon the ladder's rungs as it lay there, or he could have directed his helper to do so. The plaintiff's weight, 225 pounds, would have subjected the ladder to a test more exacting than that given to utensil of that kind if a man of com-

mon weight walked upon it. Our opinion mentioned the fact that later, when the ladder was taken to a laboratory and was there tested, it lay flat upon a surface and weights were applied to its rungs.

We do not believe that our opinion erred in the particular to which we just gave attention.

■ We will now consider the plaintiff's contention that an employer who (1) rejected the Workmen's Compensation Act, (2) appointed one of his staff as vice-principal and (3) invested him with adequate authority, may nevertheless be liable to the vice-principal upon charges of negligence if the vice-principal neglected his duties and thereby became injured.

Our opinion said:

"* * * Whether viewed under common-law standards as a question of proximate cause, contributory negligence or primary negligence of the principal for which the plaintiff was himself responsible as vice-principal, there is no right of recovery under common-law principles. * * *"

In that passage we should not have used the words "contributory negligence."

The evidence, according to our belief, shows that the defendant was not guilty of any negligence except that committed by the plaintiff himself as its vice-principal. Only by attributing the plaintiff's negligence to the defendant does the latter become guilty of any wrong. Had some one other than the plaintiff been injured by the plaintiff's negligence there would be justice in attributing the plaintiff's negligence to the defendant, but when the plaintiff was both wrong doer and victim the fiction whereby the negligence becomes the defendant's misfires. Accordingly, the plaintiff's failure to have discovered the defect in the ladder can not be deemed an act of contributory negligence,

for it did not contribute a delict to any wrong committed by the defendant. The plaintiff's failure to have inspected the ladder was the sole act of negligence which brought injury upon him.

As our previous decision states, the defendant rejected compliance with the Workman's Compensation Act. Accordingly, in an action by a workman against such an employer ORS 656.024 (2) withholds from the employer as a defense the contributing negligence of the injured workman.

Our opinion cited and quoted from the decisions of many courts which hold that at common law a vice-principal whose failure to have performed his duty subjected him to an injury can not recover from his employer. For example, it quoted from the much-cited decision of *Pittsley v. Allen,* 297 Mass 83, 7 NE2d 442:

> "One who occupies a dual position of the victim of negligence and the primary wrongdoer, is not entitled to ignore the latter, and recover damages from another who is responsible only secondarily and through a fiction of law * * *."

In *Drum v. New England Cotton Yarn Co.,* 180 Mass 113, 61 NE 812, the plaintiff, 27 years old and an employee of the defendant, was injured when one of its ladders which he was using broke. The decision, referring to the plaintiff, said:

> "* * * at the time of the injury [he] was second hand in the room where he worked. It was a part of his duty to inspect the ladder and see that it was kept in repair. * * *
>
> "* * * We can find no evidence of negligence on the part of the defendant. The plaintiff accepted the responsibility of seeing that the ladder was kept in proper repair; and we cannot say that he was an unfit person to be trusted with that responsibility. * * * If there was any breach of duty it was on his part, and he cannot avail himself of it. * * *"

We take the following from *City of Teague v. Radford,* 63 SW2d 376 (Tex):

> "It is the settled law that an employee or servant cannot recover for damages or injuries which arise from defects in a thing, for the safe condition of which such employee is himself responsible. \* \* \*"

*Sible v. Wells Brothers Co.,* 148 Ill App 109, states:

> "It clearly appears, we think, that appellee was the vice-principal of appellant. 'When a master confers authority upon one of his employes to take charge and control of a certain class of workmen in carrying on some particular branch of his business, such employe, in governing and directing the movements of the men under his charge with respect to that branch of the business, is the direct representative of the master and not a mere fellow servant.' Wenona Coal Co. v. Holmquist, 152 Ill. 581, 590.
>
> \* \* \*
>
> "The alleged negligence of appellant being, if negligence at all, necessarily the negligence of appellee, its vice-principal, it follows, we think, that for injury growing out of negligence so attributable to himself, the vice-principal cannot recover."

■ Many other decisions hold to like effect, that is, if a vice-principal, whose authority was adequate, failed to discharge his duty and was injured thereby, the negligence was his and will not be imputed to his master. If a third person was injured the master will be held responsible on the principle of respondeat superior.

In the present case the evidence fails to disclose that the defendant breached any duty which it owed to the plaintiff and thereby is not liable to him. Only the plaintiff committed a negligent act.

We think that our previous opinion is free from error. The Petition for a Rehearing is denied.