Argued April 21, affirmed May 11, 1960

# WARNER ET AL *v.* MITCHELL BROS. TRUCK LINES
## 352 P. 2d 156

*Donald H. Joyce,* Portland, argued the cause and filed a brief for appellants.

*Charles S. Crookham,* Portland, argued the cause for respondent. With him on the brief were Vergeer & Samuels, Portland.

Before McALLISTER, Chief Justice, and SLOAN, GOODWIN and DUNCAN, Justices.

DUNCAN, J. (Pro Tempore)

Plaintiffs appeal from a judgment for defendant entered July 11, 1958, in the circuit court for Multnomah county pursuant to a verdict of the jury. Plaintiffs are the widow and a minor child of Charles W. Warner, deceased. At the time of his death on January 4, 1957, deceased was employed by defendant as a truck driver and was crushed to death when a road scraper being transported in the trailer attached to the truck he was driving shifted against the cab of the truck.

The action was brought under the Employers' Liability Act and generally charged defendant under ORS 654.305 of the act and set forth specific acts of negligence. Defendant admitted the employment of deceased and that while employed in transporting the scraper, his death resulted when the scraper shifted. Defendant denied negligence on its part and as a further defense charged deceased with bearing the duty to have loaded the scraper for safe transportation and that if the loading was negligently done, it resulted from deceased's own negligence in the particulars specified.

Preliminary to a discussion of the assignments of error it will be essential to set out the substance of the evidence.

Pete A. Schons, general manager of defendant and called by plaintiffs as an adverse witness, outlined the operation engaged in. Deceased had worked several years for defendant, sometimes driving his own truck and at other times driving defendant's trucks. At the time in question deceased owned the truck and trailer then being driven but had leased it to defendant, and it was then operated by deceased as an employee of defendant. Deceased was a skilled and trusted employee, experienced with heavy machinery and in moving shovels and wheeled equipment generally. Defendant was a common carrier with irregular routes, authorized to travel on any highway within its territory. Deceased had authority to select his routes to and from the particular destinations. It was the duty of deceased to assume full responsibility for the truck and trailer and for the loading and securing of the cargo. He was authorized to purchase additional equipment such as cables and chains if needed for the purposes stated and to extend the credit of defendant in the purchase

of additional required equipment. He was under instructions to move no equipment that appeared unsafe and to contact the defendant's dispatcher if he found any situation he could not reasonably handle.

On January 2, 1957, Ronald Lovin, dispatcher employed by defendant, directed deceased on a trip with the truck and flatbed trailer to points in Washington, Idaho, and Oregon. On January 3 defendant contracted with Nelson Equipment Co. to transport the latter's scraper from Biggs, Oregon, to Portland. After securing a permit, Lovin notified deceased by telephone to transport the scraper. This scraper weighed about 30,000 pounds and was 8 feet 5 inches wide and 30 feet long. Lovin said the truck cab was of heavy gauge steel metal, but no evidence was offered as to what this consisted of. The trailer had five winches welded to the frame which were used to wind up and tighten $\frac{3}{8}$ inch steel cables with hooks on the truck, to which the cables fastened. Also, there was a guard on the trailer framed on 2″ x 8″ lumber set in stake pockets.

Charles W. Davis, employee of Nelson Equipment Co., went to Biggs and drove the scraper onto the trailer. He said that deceased directed all operations. The wheels of the scraper straddled a cargo of steel on the trailer. Davis aided deceased in securing the scraper to the trailer using five cables of $\frac{3}{8}$ inch size. Large timber blocks were nailed down forward and back of the scraper wheels. The scraper blade rested on the truckbed and was secured by cables. Davis had seen this scraper or like scrapers transported several times on like equipment. After the loading, Davis in his pickup led the way for deceased back to Portland, and during the trip they tightened cables at least twice. At the destination in Portland where the steel cargo

was unloaded, Davis parted from deceased at the latter's suggestion.

No eyewitness to the actual happening of the accident was produced. L. E. Anderson, driving an oil truck, passed deceased at the top of a hill on 82nd street, at which time deceased was traveling about 25 miles per hour. At the bottom of the hill Anderson stopped at an intersection in obedience to a red signal light; behind him he heard a noise as of breaking timbers which he thought was from the truck and heard a horn blow and saw the truck of deceased coming downhill toward him as though running by itself, and it was veering to the right. As a precaution Anderson drove through the intersection against the red light and stopped about half a block away and returned to find deceased pinned in the cab of his truck with the horn blowing. The truck wheels were against the curb and hung up on the remains of a post sized about 12 or 14 inches, which apparently had been broken by the truck. The scraper had pushed forward so that its wheels dropped between the trailer and truck cab, and its motor protruded into the truck cab.

City officer Traver investigated the accident and saw no skid marks but recalled that chains were secured to the "wheel of the tires of the scraper."

Officer Hail took pictures of the scene and aided in removing deceased from the truck cab.

■ ■ Plaintiffs first assign as error the court's refusal to read to the jury a section of the Interstate Commerce Commission Motor Safety Regulations relating to "protection against shifting cargo." Plaintiffs contended that the regulation constituted evidence of the practicability of certain safety equipment therein stated. However, this was not offered as evidence, nor was any evidence offered to show the practicability of

the equipment therein stated. Further, the regulation was not applicable, as it applied to cargo "such as beams, pipes, sheet metal, sheet steel and heavy rolls * * * *."

■■ ■ Error was assigned for failure to instruct as follows:

"You are further instructed that in connection with the foregoing instruction that the installation of armour or sufficiently strong header board or similar devices sufficient in strength to prevent the crushing of the driver's compartment of the vehicle operated by plaintiff's decedent would in no manner have limited the efficiency of the vehicle."

That requested instruction referred to another requested instruction which in turn quoted ORS 654.305. This assignment is without merit. Plaintiffs had the burden to present evidence pointing out the claimed safeguard, its practicability, and to show that the installation would have prevented the accident. *Cox v. Sanitarium Co.,* 181 Or 572, 582, 184 P2d 386. No evidence whatever was offered thereon.

■ ■ Error was assigned for withdrawing from the jury a specification of negligence in paragraph XI (b) charging failure to use "non-ductile material such as chain, angle iron * * *" to prevent the scraper from moving. Plaintiffs offered no evidence that such was practicable or would have served the purpose.

■ ■ Error was assigned for withdrawing specification of negligence paragraph XI(d) charging failure to lock the scraper wheel brakes or failing to fasten the wheels with chains. Witness Davis testified that the scraper had no emergency brake. Officer Traver recalled from his investigation following the accident that there were chains secured to the scraper wheels.

Further, no evidence was offered by plaintiffs that such action would probably have served the purpose, and in addition it does not appear that plaintiffs took exception to the court's action.

■ ■ Error was assigned for withdrawing specification of negligence paragraph XI(e) charging failure to have armoured the truck cab and failure to have provided header boards or similar devices to prevent the cargo from shifting. Plaintiffs presented no evidence of the strength of the cab nor as to what would have been practicable. Further, there was evidence that some railing was provided on the trailer, but no evidence was offered by plaintiffs refuting the capacity thereof.

■ ■ Error was assigned for instructing on the preponderance of evidence rule in the form commonly recognized prior to *Cook v. Michael,* 214 Or 513, 330 P2d 1926. Additional instructions were given on the preponderance rule in which the objectionable words were not used. Under authority of *Galer v. Weyerhaeuser Timber Co.,* 218 Or 152, 344 P2d 544, involving a similar situation, the error is not deemed of sufficient importance on which to base a reversal.

■■ ■ The last assignment claimed error for denying plaintiffs' motion for a new trial. The motion was predicated on the ground of newly discovered evidence. An employee of the plant at which deceased unloaded the steel cargo offered to testify, if a new trial were granted, that he aided in unloading the steel and that none of the lines or cables securing the scraper were thereby loosened and that the unloading did not affect the lashings on the scraper. The motion was supported by an affidavit of one of the trial jurors to the effect that the possibility that the cables securing the scraper had been tampered with when the steel was unloaded

was a contributing factor considered by the jury in arriving at the verdict for defendant. However, during the trial there was no evidence contending or suggesting that the act of unloading the steel had any connection with the shifting of the scraper. The proposed new evidence is, therefore, immaterial. During the trial it was made known to plaintiffs by testimony of witness Davis that deceased had stopped to unload the steel, but no application was then made to delay the trial or for a continuance to permit investigation. Also, it is apparent that a cursory investigation prior to trial would have uncovered the fact that deceased did stop and unload the steel. There is a presumption that plaintiffs failed to exercise due diligence before trial to have discovered this evidence, and plaintiffs have not overcome this presumption. *Lewis v. Nichols,* 164 Or 555, 103 P2d 284. The affidavit of the juror, if proper, is of no help here. Litigation would be almost endless if a party receiving an adverse verdict should be permitted to omit available evidence during the trial and then be granted a new trial on the strength of a statement by a juror suggesting that production of such evidence might have caused him to render a different verdict. The motion for new trial was properly denied.

No reversible error is found. The verdict and judgment for defendant were bolstered by the failure of plaintiffs to have produced any evidence sustaining their case as required by *Cox v. Sanitarium Co.,* supra.

Affirmed.